**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION**

| | | |
|---|---|---|
| DANE L. DUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00024 |
| | ) | |
| CUMBERLAND COUNTY SHERIFF DEPARTMENT, *et al.*, | ) | CHIEF JUDGE CRENSHAW |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Dane L. Duckett, an inmate of the Bledsoe County Correctional Complex in Pikeville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against the Cumberland County Sheriff's Department, Inmate Corrections Division; Sheriff Casey Cox; Jail Administrator Captain Tim Chaflin; Head of Medical Staff Jeff Shelton; Dr. Stacy Carlton; and Dr. Richard Buurman. The amended complaint alleges violations of Plaintiff's civil and constitutional rights that occurred while Plaintiff was held at the Cumberland County Sheriff's Department in Crossville, Tennessee. (Doc. No. 42). Plaintiff seeks monetary damages and any other relief the Court deems appropriate. (Id. at 6, 14).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.     Procedural History**

On February 28, 2018, Plaintiff filed this pro se action under 42 U.S.C. § 1983. (Doc. No. 1). By letter dated August 16, 2018, Plaintiff notified the Court that he was "righting [sic] to this Court to apoliges [sic] for all the stuff I've put the Court through over my health matters . . ." and

1

"I'm over all of this . . . ." (Doc. No. 29 at 3). He stated that his letter would be the "last letter" for his case. (Id.) Understanding Plaintiff's statements to indicate his desire to voluntarily dismiss his case, the Court dismissed this action without prejudice by Order entered on August 22, 2018. (Doc. No. 30). In the same Order, the Court denied Plaintiff's application to proceed in forma pauperis (Doc. No. 10) as moot.

Plaintiff subsequently filed two motions to reconsider and to reopen this case (Docs. No. 31 and 34), in which Plaintiff made clear that he wanted to pursue this action and that his previous statements led to a "misunderstanding." (Doc. No. 31 at 3-4). By Order and Memorandum Opinion entered on November 1, 2018, the Court granted Plaintiff's motions to reconsider (Doc. No. 21) and to reopen this case (Doc. No. 34). (Doc. No. 35). By the same Order, the Court directed the Clerk to reinstate Plaintiff's application to proceed in forma pauperis (Doc. No. 10) as pending and granted Plaintiff until November 20, 2018, to submit a certified copy of his inmate trust account statement no later than November 20, 2018. (Doc. No. 35 at 4). Plaintiff complied with the Court's Order. (Doc. No. 40).

Since the filing of his complaint, Plaintiff had submitted a number of letters to the Court, making new allegations concerning, among other things, the conditions of his confinement and the medical treatment he is receiving. (Doc. Nos. 4, 5, 7, 12, 13, 14, 15, 16, 21, 23, 25). By Order entered on December 28, 2018, the Court granted Plaintiff's application to proceed in forma pauperis and advised Plaintiff that he would not be permitted to litigate this action by way of letters to the Court. (Doc. No. 41). Due to the protracted procedural history of the case, the Court granted Plaintiff permission to file an amended complaint containing all allegations he wishes to raise in this action. (Id. at 3-4). Plaintiff has now filed an amended complaint. (Doc. No. 42).

**II.     PLRA Screening Standard**

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed in forma pauperis, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement. 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir.2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir.2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal

3

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

### III. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### IV. Alleged Facts

The amended complaint alleges that, while Plaintiff was incarcerated at the Cumberland County Sheriff's Office facility "in the end of 2015 through 2016," and again in 2017 to an unspecified date, he repeatedly asked for blood testing and monitoring because he had previously been diagnosed with "HCV Stage III." (Doc. No. 42 at 2). He alleges that his outside doctor, David Florence, had ordered this blood work due to Plaintiff's diagnosis "so they could keep an eye on [his] antibody and viral load." (Id. at 3). According to the complaint, Defendant Tim Claflin said that no blood work or testing would be done because he was going to wait and see if Plaintiff would be released. (Id. at 3).

During one of Plaintiff's court appearances in 2017, Judge f/n/u Patterson stated on the record that he would grant a furlough to any inmate who needed medical treatment or tests "to

keep the county and jail from having to pay the bill." (Id. at 6-7). Plaintiff has not been furloughed. The complaint alleges that Chaflin told Plaintiff to "take this as a learning experience." (Id. at 6).

According to the complaint, Plaintiff has sustained severe liver damage during the "3 ½ months to the 10 ½ months" he was not provided with blood monitoring and treatment while held at the Cumberland County Sheriff's Office facility. (Id. at 3). His health is worse, his cancer levels are up to 38.4%, and his viral load is over 7.5 million. (Id. at 4). The complaint alleges that he "would not have cirrhosis, and damages to other organs" if the doctors had treated him and if the other Defendants had permitted the treatment. (Id. at 13).

The complaint also alleges that Head of Medical Staff Jeff Shelton "blacked out" crucial information on a physician's report faxed to Plaintiff's doctor. (Id. at 6).

## V. Analysis

The crux of the complaint is that Defendants failed to provide Plaintiff with appropriate treatment and medication for his known hepatitis diagnosis and correspondent health issues while he was an inmate at the Cumberland County Sheriff's Department facility.

Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir.

2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. Deliberate indifference "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id.

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. See Estelle, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate

indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). However, prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack thereof or by "interfer[ing] with treatment once prescribed." Estelle, 429 U.S. at 104-05; see also Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available.")).

### A. Cumberland County Sheriff's Department

First, the complaint names the Cumberland County Sheriff's Department, Inmate Corrections Division, as a Defendant to this action. However, a sheriff's department is not a "person" that can be sued under 42 U.S.C. § 1983. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994); see also Mathes v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:10-cv-0496, 2010 WL 3341889, at **2-3 (M.D. Tenn. Aug. 25, 2010) (noting that "since Matthews, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit" under Tennessee law, and therefore granting the motion to dismiss the § 1983 claim against the Davidson County Sheriff's Office). Consequently, the Plaintiff's § 1983 claims against the Cumberland County Sheriff's Office must be dismissed for failure to state a claim upon which relief may be granted.

### B. Sheriff Casey Cox

Second, the complaint names Sheriff Casey Cox as a Defendant to this action due to "his negligence of overall not doing his job of staying on top of his jail." (Doc. No. 42 at 6). Although

7

Plaintiff's claims against Sheriff Cox are based on his supervisory position, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." Iqbal, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that Cox was directly responsible for Plaintiff's alleged lack of medical treatment at the Cumberland County Sheriff's Office facility, nor can any such allegations be liberally construed from the complaint. Neither does the complaint allege that Cox "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. Id. Because Plaintiff's allegations fail to show how Cox was personally involved in the acts about which Plaintiff complains, the Court must dismiss the Section 1983 claims against Cox in his individual capacity for failure to state claims upon which relief can be granted.

With respect to Plaintiff's claims against Cox in his official capacity as Sheriff, presumably of Cumberland County, it is well-settled that an official capacity suit is nothing more than a suit against the governmental entity. See, e.g., Leach v. Shelby Cnty., 891 F.2d 1241, 1245–46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself.");

8

Petty v. Cnty. of Franklin, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself.") (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity.")).

While Cumberland County is a suable entity, it is responsible under Section 1983 only for its "own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). Under Section 1983, a municipality can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of the county's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693 (1978)); Regets v. City of Plymouth, 568 Fed. Appx. 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting Slusher v. Carson, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

Here, construing the allegations of the pro se complaint liberally, the complaint alleges that Sheriff Cox, acting in his official capacity, established or implemented a policy or custom which caused Plaintiff to be deprived of a constitutional right—specifically, a policy or custom that the facility will not provide medical care, or certain types of medical care, to inmates who may be released soon in order to avoid incurring the expenses of treatment. The Court finds that this

9

allegation states a colorable claim under Section 1983 against Sheriff Cox in his official capacity. This is a preliminary finding only for purposes of the required PLRA screening; however, the claim will proceed for further development.

### C. Jail Administrator Captain Tim Chaflin

Next, the complaint alleges that Tim Chaflin, a Jail Administrator responsible for ensuring that inmates receive proper medical treatment, took deliberate actions in accordance with Cumberland County's policy of putting cost savings ahead of inmate care, and his actions led to Plaintiff's injuries. For example, the complaint alleges that Chaflin knew that Plaintiff's outside doctor had ordered certain follow-up tests and monitoring due to Plaintiff's hepatitis diagnosis, and Chaflin would not permit the medical staff at the facility to perform these tests and monitoring.

For purposes of the required PLRA screening, the Court finds that Plaintiff's hepatitis constitutes a sufficiently serious medical need. See Rouster, 749 F.3d at 446. Although in some instances prison non-medical staff have no role in the medical treatment provided to inmates, here, the complaint alleges that Jail Administrator Claflin interfered with the Plaintiff's medical treatment and, in doing so, Claflin knew of and disregarded an excessive risk to Plaintiff's health. Cf. Carson v. Hamblen Cnty., No. 2:15-cv-337, 2017 WL 3038135, at *5, 9 (E.D. Tenn. July 17, 2017) (dismissing inmate's Section 1983 claim, finding plaintiff had presented no evidence that defendants played any role in the medical care provided to diabetic inmate or knew of and disregard an excessive risk to inmate's health or safety). Further, the complaint alleges that Plaintiff's health and well-being was affected as a result of the delayed testing, monitoring, and needed treatment such that Chaflin "consciously expos[ed]" Plaintiff to a risk of serious harm. LaMarbe v. Wisneski, 266 F.3d 429, 439 (6th Cir. 2001). Therefore, for purposes of the required

PLRA screening, the Court finds that the complaint states actionable deliberate indifference to Plaintiff's serious medical needs claims under Section 1983 against Defendant Chaflin in his individual capacity.

**D.     Jeff Shelton**

The complaint alleges that Jeff Shelton is "Head of Medical Staff" at the Cumberland County facility. (Doc. No. 42 at 1). The complaint alleges that Shelton "blacked out" crucial information on a physician's report faxed to Plaintiff's doctor on January 20, 2018 (Id. at 6), engaged in "lies and miss leading [sic] doctors in [Plaintiff's] health," (Id.), told Plaintiff to "take this as a learning experience" (Id.), and committed "negligence" (Id.)

Allegations of negligence are insufficient to entitle a Section 1983 plaintiff to relief. Estelle, 429 U.S. at 105-06. Therefore, to the extent that the complaint alleges that Shelton was negligent, the complaint fails to state a claim upon which relief can be granted.

Construing the complaint's allegations liberally, as the Court must at this stage of the proceedings, the complaint alleges that Shelton interfered with Plaintiff's medical treatment and acted with deliberate indifference to Plaintiff's serious medical needs in applying Cumberland County's cost saving policy to Plaintiff, effectively depriving him of needed medical care. These allegations support actionable an actionable Section 1983 claim upon which relief can be granted as to Shelton is his individual capacity.

**E.     Drs. Stacy Carlton and Richard Buurman**

Finally, the complaint alleges that Defendants Drs. Carlton and Buurman failed to properly treat and monitor Plaintiff's hepatitis and other medical conditions. With respect to Plaintiff's claims against Dr. Carlton, the complaint alleges that she was a physician at the facility "back in

11

2015 and 2016, and 10 ½ months into 2017" and failed to treat Plaintiff for seven and a half months. (Doc. No. 42 at 6, 9). The statute of limitations for a Section 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). Porter v. Brown, 289 Fed. App'x 114, 116 (6th Cir. 2008).

Applying the prisoner mailbox rule,[1] the complaint was filed on February 28, 2018. (Doc. No. 1 at 26). Thus, all Section 1983 claims arising from events that occurred prior to February 28, 2017 are time barred under the governing one year statute of limitations. Plaintiff cannot pursue any Eighth Amendment claims pursuant to Section 1983 against Dr. Carlton for any actions or inactions that occurred in 2015, 2016, or prior to February 28, 2017. Those claims will be dismissed.

As to Drs. Carlton's and Buurman's states of mind, the complaint alleges that they provided no medical treatment to Plaintiff for months, despite Plaintiff's efforts to obtain such treatment, Plaintiff's disclosure to them and medical staff of Plaintiff's diagnosis and concerns, and Plaintiff's release of his outside medical records to the facility. Prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack

---

[1] Under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in Richard v. Ray, 290 F.3d 810, 812 (6th Cir. 2002) and Scott v. Evans, 116 Fed. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Here, although Plaintiff signed and dated his original complaint on February 21, 2018, Plaintiff added the date "February 28, 2018" in his own handwriting at the top of an attachment to the complaint; therefore, the Court considers the later date, on which Plaintiff clearly still had physical possession of his complaint and attachments, as the date of filing under the prisoner mailbox rule.

thereof or by "interfer[ing] with treatment once prescribed." Estelle, 429 U.S. at 104-05; see also Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991)(a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available.")). The Court finds that the complaint's allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." Id. Consequently, for purposes of the required initial screening, the Court finds that the complaint sets forth non-frivolous Eighth Amendment claims against Drs. Carlton and Buurman in their individual capacities based on the inadequacy of Plaintiff's medical treatment. However, Plaintiff's claims against Dr. Carlton for any actions or inactions that occurred in 2015, 2016, or prior to February 28, 2017, fall outside the governing statute of limitations period and must be dismissed.

## V.     Class Action

To the extent that Plaintiff has been diagnosed with Hepatitis C and is currently incarcerated in a Tennessee Department of Corrections facility, Plaintiff may be included in a present class action: Charles Graham v. Tony Parker, No. 3:16-cv-1954 (M.D. Tenn.) (Crenshaw, Chief Judge, presiding). By Order entered on May 4, 2017, this Court certified the following class:

> All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Corrections or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Corrections has ultimate responsibility for their medical care and who have at least 90 days or more remaining to serve on their sentences and are either currently diagnosed with Hepatitis C infection or are determined to have Hepatitis C after a screening test has been administered by the Department of Corrections.

(Graham, Doc. No. 33).

The Court will mail Plaintiff a copy of pertinent orders from the Graham case so that Plaintiff may determine whether he is a member of the class defined by the undersigned in Docket No. 33 of the Graham case. As explained by the Honorable Aleta A. Trauger recently:

> Apparently because only injunctive and declaratory relief is sought, no provision has been made in Graham for members of the class to receive notice of the lawsuit, and there is no mechanism—or need—for any putative class member to opt out. Any person who falls within the parameters of the class definition will be a class member and will benefit in the event class-wide relief is granted. Further, it does not appear that inclusion within the class would have the effect of barring individuals from pursuing individual actions for damages for the past denial of necessary medical care.

Hamby v. O'Toole, No. 3:17-cv-00629 (M.D. Tenn.) (Doc. No. 109 at 4). Plaintiff's claims as set forth in this lawsuit appear to pre-date Plaintiff's incarceration in a Tennessee Department of Corrections facility and therefore appear to be separate claims from any claims he may have through the Graham class action.

## VI. Conclusion

In conclusion, the Court has reviewed the complaint pursuant to the PLRA and finds that the complaint states the following actionable Section 1983 claims: Eighth Amendment deliberate indifference Plaintiff's serious medical needs claims against Drs. Carlton and Buurman in their individual capacities based on the lack of Plaintiff's medical treatment; an Eighth Amendment deliberate indifference to Plaintiff's serious medical needs claim against Sheriff Casey Cox in his official capacity based on the Cumberland County policy of refusing to provide medical care to certain inmates who may be released soon as a cost-saving measure; and Eighth Amendment deliberate indifference to Plaintiff's serious medical needs claims against Chaflin and Shelton in their individual capacities based on their actions or personal involvement in decisions affecting the

14

Plaintiff's care and well-being. 28 U.S.C. § 1915A. These claims shall proceed for further development of the record.

However, the complaint fails to state Section 1983 claims upon which relief can be granted as to all other claims against all other Defendants. Therefore, those claims and defendants will be dismissed. Likewise, Plaintiff's claims against Dr. Carlton for any actions or inactions occurring in 2015, 2016, or prior to February 28, 2017, fall outside the governing statute of limitations period and must be dismissed.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE