UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DANE L. DUCKETT, <br><br> Plaintiff, <br><br> v. <br><br> CUMBERLAND COUNTY SHERIFF DEPARTMENT, et al., <br><br> Defendants. | Case No. 2:18-cv-00024 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises out of pro se and *in forma pauperis* Plaintiff Dane L. Duckett's pretrial detention at the Cumberland County Jail (CCJ) in Crossville, Tennessee. (Doc. No. 81.) Duckett's second amended complaint alleges that Defendants Sheriff Casey Cox, CCJ Administrator Tim Claflin, CCJ Medical Staff Jeff Shelton, Dr. Stacy Carlton, and Dr. Richard Buurman denied Duckett adequate medical care for his liver disease in violation of his constitutional rights. (*Id.*) Before the Court is Defendant Buurman's motion to dismiss Duckett's claims against him. (Doc. No. 85) Duckett has responded in opposition to Buurman's motion. (Doc. No. 104.) For the reasons that follow, the Magistrate Judge will recommend that the Court deny Buurman's motion to dismiss and allow Duckett's claims against him to proceed.

## I. Factual and Procedural Background[1]

This action began on March 8, 2018, when the Court received Duckett's original complaint for civil rights violations brought under 42 U.S.C. § 1983. (Doc. No. 1.) Duckett suffers from liver disease, and his claims are based on the medical care he received while detained at the CCJ. (Doc. No. 81.) The Court granted Duckett's application to proceed *in forma pauperis* and allowed Duckett to file an amended complaint. (Doc. No. 41.) On April 1, 2019, the Court screened the amended complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A and found that Duckett had stated colorable claims for deliberate indifference to his serious medical needs against Cox in his official capacity and against Claflin, Shelton, and Buurman in their individual capacities. (Doc. No. 44.) The Court also found that Duckett had stated colorable claims against Carlton in her individual capacity based on her alleged conduct on or after February 28, 2017. (*Id.*) However, the Court found that Duckett's claims based on Carlton's conduct before that date were time-barred and therefore dismissed those claims along with the other remaining claims in Duckett's amended complaint. (Doc. Nos. 44, 45.)

On August 28, 2019, the Court granted Duckett's motion for leave to file a second amended complaint. (Doc. No. 80.) The second amended complaint, which is the operative pleading in this action, alleges that the CCJ knew Duckett had the hepatitis C virus (HCV) and that Duckett "turn[e]d in" a prescription from his doctor for further tests regarding a mass on Duckett's liver. (Doc. No. 81, PageID# 456, ¶ 1.) Duckett repeatedly asked "to have something [d]one" about his liver problems and "to have [his] blood work done because of the HCV." The CCJ "medical staff [told him the] doctor was not going to do [any] blood work or test[s]" even though the CCJ knew

---

[1] The facts in this section are drawn from Duckett's second amended complaint (Doc. No. 81) and taken as true for purposes of resolving Buurman's motion to dismiss.

that Duckett "had to have blood work to keep an eye on [his] ant[i]bod[ies] and [his] viral[ l]oad" to avoid "severe liver damage[.]" (*Id.* at PageID# 456, ¶¶ 2–4, 7.) "Claflin was informed that [Duckett] had [a] he[a]lth matter and needed test[s] and blood work done to see . . . what the mass was on [his] liver." (*Id.* at PageID# 456, ¶ 10.)

Duckett alleges that there is a "Cumberland County policy of refusing to provide medical care to certain inmates who may be released soon as a cost-saving measure," and that, based on this policy, CCJ "medical staff and . . . administration" kept "telling [Duckett] . . . nothing was wrong with [him]" even though they knew Duckett "had not been sent[enced]" and "was not going to be released[.]" (*Id.* at PageID# 457, ¶¶ 11–13.) The CCJ "would not put in for a furlo[ugh] for [Duckett] . . . to have test[ing] and tre[a]t[me]nt" even though a state court judge told Cox and Claflin three times that, if Duckett needed any "treatment or tests," CCJ or its medical staff should notify the judge who "would grant a furlo[ugh] to keep the jail and county from having to pay . . . the cost of it[.]" (*Id.* at PageID# 457, ¶¶ 14, 16.) But "the jail and medical staff and doctor[]s . . . did not do it[.]" (*Id.* PageID# 457, ¶ 18.)

"After 5 ½ mo[]nths[,] . . . Doctor Buurman did order a[n] abdom[en] test, with no bloodwork[.]" (*Id.* at PageID# 458, ¶ 19.) Duckett's doctor "sent in" a "test that was done" to the CCJ "by fax, but [the] head medical staff did not give it to Doctor Buurman[.]" (*Id.*) Duckett was denied "blood work for over 10 ½ months" even though "the jail kn[e]w[] [his] blood was to be monitor[ed]" to prevent "cirrhosis[.]" (*Id.* at PageID# 458, ¶¶ 20, 21.) "The last 2 test[s] that [were] done without blood work showed mass[es] on [Duckett's] liver, and 4 o[]ther he[a]lth matters that [were] just as life threat[en]ing . . . ." (*Id.* at PageID# 458, ¶22.) Duckett submitted a request asking for the test results, but the "doctor would not tell [him] [or] see [him.]" (*Id.* at PageID# 458, ¶ 23.) Instead, "[the doctor] and head medical staff wrote on" the request that "nothing was [w]rong with

3

[Duckett]" and they did "not feel that [his] liver [was] the cause of his pain[.]" (*Id.*) Because he did not get the "proper medical attention [he] needed," Duckett now has "hepatic cirrhosis F-4, only 25% of [his] liver working, [an]other liver mass," and other serious medical conditions. (*Id.* at PageID# 459, ¶¶ 26, 27.)

Duckett alleges that, despite telling him "nothing was wrong with [him,]" the CCJ "had [the] [District Attorney's] office put in for [him] to be sent to" a Tennessee Department of Correction (TDOC) facility for health care. (*Id.* at PageID# 459, ¶ 31.) On June 20, 2018, attorney Amanda M. Worley from the District Attorney's office made an oral motion in state court to transport Duckett to the TDOC for "safekeeping, over [his] health needs." (*Id.* at PageID# 460, ¶ 33.) By that time, Buurman had "quit[] working for" the CCJ. (*Id.* at PageID# 460, ¶ 32.) Duckett subpoenaed Buurman "to come to court to tell what was going on with [Duckett's] health," (*id.*) but Worley "said in her oral motion that [D]r. Buurman[ ] did not need to come to court . . . [because] she spoke to him on [the] phone and he told her that Mr. Duckett needed to go to a specialist over his liver, or a doctor over his health matters . . ." (*id.* at PageID# 460–61, ¶ 39). Duckett alleges that Buurman "turn[ed] a blind eye to [Duckett's] he[a]lth needs" in accordance with jail policies and ignored test results but, after quitting his job at the CCJ, told the "D.A. [that Duckett] needed help . . . ." (*Id.* at PageID# 462, ¶ 48.) Duckett requests money damages, including the costs of his medical bills. (Doc. No. 81.)

On September 18, 2019, Buurman filed a motion to dismiss Duckett's claims against him for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 85.) Buurman argues that Duckett's factual allegations are insufficient to support a deliberate indifference claim against Buurman under § 1983 and that any

claims under state law fail because Duckett did not comply with state-law notice requirements. (Doc. No. 86.)

Duckett responded in opposition, arguing that Buurman knew Duckett had HCV and needed regular blood work; Buurman and Shelton ran blood tests on Duckett in December 2017 and told Duckett he "was good" even though he was not well (Doc. No. 104, PageID# 547, ¶ 3); Buurman "didn't ask for bloodwork" when he ordered abdominal imaging for Duckett because "he already knew [the bloodwork] would show high levels" but told Duckett his health "was good" anyway (*id.* at PageID# 548, ¶ 7); Buurman repeatedly told Duckett that he was fine and nothing was wrong with his liver; Buurman "refused to give [Duckett] medication for [his] sickness and pain" (*id.* at PageID# 549, ¶ 17); and Buurman and the CCJ failed to provide required blood testing in June 2018. Duckett emphasizes that Buurman told him that "'[Buurman] did not feel it was [Duckett's] liver' causing [Duckett] pain[,] [did] not prescribe[e] [Duckett] [anything] for sickness or pain, and stat[ed] in several reports . . . that [Duckett] was ok, but 10 ½ months later [told the] D.A. [that] Duckett need[ed] to see a liver specialist and [doctor] over other health matters." (*Id.* at PageID# 550, ¶ 24.) Buurman did not file a reply.

## II.     Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*

*v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Duckett proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.     Analysis**

    **A.     Deliberate Indifference Claims Under 42 U.S.C. § 1983**

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). "To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722 (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Here, Duckett alleges that

Buurman, while employed by Cumberland County, deprived Duckett of necessary medical care in violation of his constitutional rights. Buurman has not argued that he is not a state actor for purposes of liability under § 1983, and the Court finds that Duckett's allegations regarding Buurman's employment at the CCJ are sufficient to support a reasonable inference that Buurman acted under color of state law. The only remaining question is whether Duckett has plausibly alleged that Buurman deprived him of a federal right.

The Eighth Amendment, which applies to state governments through the Fourteenth Amendment, "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Berkshire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The same protection extends to pretrial detainees like Duckett under the Fourteenth Amendment's Due Process Clause. *See Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) ("[U]nder the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'" (quoting *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)); *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." (citations omitted)). Courts therefore analyze deliberate indifference claims brought by pretrial detainees under the Fourteenth Amendment using the same legal framework as those brought by convicted prisoners under the Eighth Amendment.[2] *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

---

[2] The Sixth Circuit has recognized that the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)—which announced a purely objective standard for excessive force claims brought by pretrial detainees that differs from the objective and subjective standard

A deliberate indifference claim against an individual actor has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires showing the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (emphasis in original) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the prison official had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Courts determine this subjective component "'in light of the prison authorities' current attitudes and conduct.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The Supreme Court has long held that this showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."

---

for excessive force claims brought by convicted individuals—calls into question whether a similar objective standard should also apply to pretrial detainee's deliberate indifference claims. *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018) (recognizing "that this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether [a pretrial detainee] need even show that the individual defendant-officials were subjectively aware of her serious medical conditions and nonetheless wantonly disregarded them"). The Court need not decide which standard applies in this case, however, because Duckett's second amended complaint satisfies the objective and subjective components for the reasons explained herein.

8

Case 2:18-cv-00024 Document 127 Filed 07/17/20 Page 8 of 11 PageID #: 660

*Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Buurman has not addressed the legal standard for medical deliberate indifference claims. He makes no argument regarding whether Duckett has sufficiently pleaded the existence of a serious medical need. The Court finds that Duckett's allegations regarding his diagnosed HCV are sufficient to plausibly allege that he had a serious medical need. *See, e.g.*, *Atkins v. Parker*, 412 F. Supp. 3d 761, 781 (M.D. Tenn. 2019) (finding "that chronic HCV is a serious medical condition" for purposes of deliberate indifference claims and "courts have so found about the hepatitis C virus regardless of whether infection has reached the chronic stage"). Regarding Buurman's knowledge and state of mind, Duckett's second amended complaint alleges that Buurman refused to run blood tests because of the CCJ's cost-saving policies, ignored other test results, and waited until after he quit his job at the CCJ to tell the DA's office that Duckett needed to see a liver specialist. (Doc. No. 81.) Duckett further alleges that the state court granted the DA's motion to transfer Duckett away from the CCJ to receive medical care. (*Id.*) The Court finds that these allegations alone, construed in the light most favorable to Duckett, plausibly allege that Buurman was aware of a substantial risk of serious harm to Duckett and disregarded that risk while he worked at the CCJ.

Buurman's motion to dismiss acknowledges that Duckett alleges DA Worley told the state court that "Dr. Buurman informed her that Mr. Duckett needed to be seen by a specialist regarding his liver or 'a doctor over his health matters[,]'" and argues that this allegation shows that Buurman "recommended treatment for Mr. Duckett." (Doc. No. 86, PageID# 496–97 (quoting Doc. No. 81, PageID# 461, ¶ 39).) But Buurman ignores that this allegation, construed in the light most favorable to Duckett, shows that Buurman *knew* Duckett needed treatment while he worked at the CCJ, but waited to recommend that treatment until after he no longer worked there. Moreover,

Duckett's response in opposition to Buurman's motion to dismiss clarifies his allegations that Buurman knew Duckett had HCV, repeatedly told Duckett that his health was good, repeatedly refused to run blood tests, and mischaracterized and refused to explain the results of tests he did run. (Doc. No. 104.) In light of Duckett's pro se status, these allegations are properly included in the Court's analysis of Buurman's motion to dismiss. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that the district court should have "read all of [pro se plaintiff's] filings together before dismissing [the] case"); *Harding v. Davidson Cty. Sheriff's Office*, No. 3:13-cv-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013) (rejecting argument that "factual allegations made in [a pro se] plaintiff's response in opposition to [a] motion to dismiss" should not be considered in ruling on the motion to dismiss). Accordingly, Buurman's motion to dismiss Duckett's deliberate indifference claims under § 1983 should be denied.

### B. State Law Claims

Buurman argues that any state law claims in Duckett's second amended complaint should be dismissed because Duckett has not complied with the notice requirements set forth in the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-121 et seq. However, there is no indication in the second amended complaint that Duckett intends to assert state law claims against Buurman. Duckett expressly characterizes this case as an "action under 42 U.S.C. § 1983 . . . ." (Doc. No. 81, PageID# 463, ¶ 52.) He has not relied on any state laws. Accordingly, there are no state-law claims to dismiss and Buurman's argument on this point is moot.

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Buurman's motion to dismiss (Doc. No. 85) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt

of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

      Entered this 17th day of July, 2020.

                                                                                                      ALISTAIR E. NEWBERN
                                                                                            United States Magistrate Judge